United States District Court
District of Massachusetts

| | |
|---|---|
| Jane Smith, et al.,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>Michael Colotti,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No.<br>)　24-11615-NMG<br>)<br>)<br>)<br>) |

MEMORANDUM & ORDER

GORTON, J.

Plaintiff, Jane Smith ("plaintiff"), brings this action based upon allegations that that police officers and school officials discriminated against her minor son, D.S., and failed reasonably to accommodate his disability. Now pending before the Court is the motion to dismiss of defendants, the SEEM Collaborative ("SEEM"), a collection of school districts, and four school employees of one of those districts, Jennifer Pignone, Adam McCusker, Josephine Jaynes and Pamela Mulvey ("the SEEM employees"), (collectively "defendants"). For the reasons set forth below, defendants' motion to dismiss will be allowed.

I.   **Background**

SEEM is a collaborative of school districts established under Massachusetts law. Since at least 2022, D.S. attended a

- 1 -

high school within a district of SEEM, Campus Academy ("Campus Academy" or "the school"), which specializes in educating children with special needs.  According to plaintiff, D.S. attended Campus Academy based upon psychiatric diagnoses that he suffered from Post Traumatic Stress Disorder and Disruptive Mood Dysregulation Disorder, a condition characterized by emotional dysregulation and frequent outbursts of anger.

On October 6, 2022, while D.S. was a student at Campus Academy, he completed an in-class writing assignment that asked students to address several prompts.  In response to one of the prompts, "[i]nvent and describe a new food," D.S. wrote:

> Fe(No3)3 + C6H22O11, Ambiguously delicious, explosively sweet.  Made in a 2 liter resulting yummy residual root beer flavor.  Just don't leave it under your desk too long. Make sure to burp the bottle every half hour period warning may include Fe2 O3 if left out long, do not consume. Caution choking hazards do not leave open near young children.[1]

In response to another prompt, "[w]hat would you do if you woke up one morning to find yourself invisible?," D.S. wrote:

> If I woke up one morning to find myself invisible, I would go to a local hardware store like Home Depot or Ace Hardware.  At the store I would take the ingredients for nitrogen Triiodide.  Using the Nitrogen Triiodide I would blow stuff up.  Blowing up stuff is fun.  The end.[2]

---

[1] Fe(NO3)3, or ferric nitrate, is a violet crystalline solid that can explode when combined with combustible materials.

[2] Nitrogen triiodide, or NI3, is an inorganic compound that can explode when exposed to friction, pressure, sound or light.

Concerned with what D.S. had written, his teacher reported the responses to school administrators who then contacted plaintiff.

A few days later, a routine search of D.S.'s backpack revealed various chemicals and adjacent items, including a voltmeter (a device used to test for electrical currents), silica (a chemical used in moisture absorbing packets), ammonium nitrate (a chemical found in ice packs), copper shavings and a metal file.  Following the search, school administrators suspended D.S. on grounds described as "threat/intimidation and weapon."  Administrators also claimed (falsely, according to plaintiff) that D.S. had been able remotely to "scramble" the school's computer network.  They filed reports with the police in that regard.

On October 17, 2022, police obtained a search warrant based upon their belief that D.S. possessed explosive materials. The warrant authorized the seizure of any explosive material and any internet-connected device to which D.S. had access.  During a search of D.S.'s residence, officers seized five computers and materials for a project on electrolysis, the process of using electricity to split water into hydrogen and oxygen.

That same day, police also went to Campus Academy to seize D.S.'s cellphone.  One of the SEEM employees escorted D.S. to a conference room where an officer demanded that D.S. surrender his phone.  D.S. did not cooperate and, according to plaintiff,

- 3 -

the encounter triggered a psychiatric outburst.  As a result of
his noncompliance, the officers used a taser and ultimately
seized the phone.  They restrained D.S. and transported him to
Winchester Hospital, after which, D.S. was expelled from Campus
Academy and charged with delinquency and assault and battery.
Both charges were later dismissed.

In June, 2024, plaintiff filed suit on behalf of D.S. in
this Court asserting 11 counts.  Relevant to the pending motion,
those counts include 1) violation of Title II of the Americans
with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., against
SEEM (Counts I and II), 2) violation of the Massachusetts Equal
Rights Act, M.G.L. c.93, § 103, against SEEM and the SEEM
employees (Counts IV and V), 3) violation of D.S.'s
constitutional rights pursuant to 42 U.S.C. §1983 against the
SEEM employees (Count IX) and 4) a claim for intentional
infliction of emotional distress against the SEEM employees
(Count X).  Defendants now move to dismiss those counts.

## II. Legal Standard

To survive a motion to dismiss, a plaintiff's complaint
must contain factual matter sufficient to state a claim for
relief that is actionable as a matter of law and "plausible on
its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When
considering the merits of a motion to dismiss, the Court must

- 4 -

accept all non-conclusory factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). A claim is plausible if, after accepting the allegations as true, the Court can draw the reasonable inference that the defendant is liable for the conduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III. Analysis

### A. ADA Claims (Counts I and II)

Under the ADA, a public entity cannot deprive those who suffer from a "qualified disability" of "the benefits of the services, programs, or activities" provided by such entity. 42 U.S.C. §12132; see Sosa v. Mass. Dept. of Corr., 80 F.4th 15, 31 (1st Cir. 2023) (quoting Snell v. Neville, 998 F.3d 474, 499 (1st Cir. 2021)). Such deprivation can occur where an entity either 1) "intentionally discriminate[s]" against a person or 2) fails to "make a reasonable accommodation" for him. Id. at 31-32. In either case, the burden rests upon the plaintiff plausibly to allege that the exclusion occurred "by reason of his disability." Toledo v. Sanchez, 454 F.3d 24, 38 (1st Cir. 2006); Parker v. Universidad de P.R., 225 F.3d 1, 4 (1st Cir. 2000).

### 1. Reasonable Accommodation

In her complaint, plaintiff first alleges that SEEM violated the ADA by failing reasonably to accommodate D.S.'s disability.  According to plaintiff, SEEM and its employees were obligated to accommodate D.S.'s disabilities and failed to do so by allowing police to execute a warrant to seize his phone without (1) accounting for the likelihood that it would exacerbate D.S.'s PTSD or (2) taking any affirmative steps to prevent mental distress to D.S.  Defendants rejoin that such allegations are insufficient to state a claim for failure to accommodate.

To state an ADA claim based upon a public entity's failure to provide reasonable accommodation, the plaintiff must establish that 1) he required an "individualized change" to a public entity's policy or practice because of his disability and 2) the public entity failed to make that change unjustifiably. Sosa, 80 F.4th at 32 (citing Payan v. L.A. Cmty. Coll. Dist., 11 F.4th 729, 738 (9th Cir. 2021)); Toledo, 454 F.3d at 32.

As plaintiff correctly asserts, both the First Circuit Court of Appeals ("the First Circuit") and other circuits have extended the necessity of providing reasonable accommodation to "police activities," including a police officer's execution of a warrant. See, e.g., Gray v. Cummings, 917 F.3d 1, 15 (1st Cir. 2019) ("[A] police officer may violate the ADA in executing an

arrest."); Sheehan v. City & Cnty. of S.F., 743 F.3d 1211, 1233
(9th Cir. 2014) (similar).  Plaintiff therefore suggests that
the obligation also extends to a school and its personnel.  She
provides no authority, however, that the ADA obligates schools
to accommodate by intervening when police execute a warrant
against a student, nor is this Court aware of any. Cf. Doe v.
Dennis-Yarmouth Reg'l Sch. Dist., 578 F. Supp. 3d 164, 172 (D.
Mass. 2022) (discussing school's reasonable accommodation for
in-school supervision); Commonwealth v. Snyder, 597 N.E.2d 1363,
1367 (1992) (addressing school's obligation during a warrantless
search of a student).

    To the contrary, the only analogous reasonable
accommodation claims of which this Court is aware were rejected
based upon the absence of "any case law" supporting the argument
that a school and its "personnel may face liability" for failing
to intervene when police execute a warrant at a school. A.V. ex
rel. Hanson v. Douglas County School District, 586 F. Supp. 3d
1053, 1074 (D. Colo. 2022); see Moore v. Lauer, No. 3:22-CV-
50354, 2024 WL 245188, at *7 (N.D. Ill. Jan. 23, 2024) ("The
Court does not find that it's clearly established that a school
official must intervene in a police officer's actions.").  The
same is true in this case.  In the absence of any clearly
identifiable duty under the ADA for the school to intervene or
otherwise accommodate the execution of a warrant to the same

- 7 -

extent that police officers must, SEEM and its employees cannot, as a matter of law, be held liable for failure to accommodate D.S. See Gray, 917 F.3d at 15; Moore, 2024 WL 245188, at *7. That element of plaintiff's claim will therefore be dismissed.

### 2. Intentional Discrimination

Plaintiff further alleges that SEEM intentionally discriminated against D.S. because its employees assumed, in response to his in-class writings, that he was dangerous simply because he is mentally ill and thereafter fabricated allegations to police that he was capable of hacking computers.  Defendants respond that such allegations fail to state a claim under the ADA.

A claim for intentional discrimination under the ADA arises when a public entity engages in "outright intentional exclusion" of a disabled person from "opportunities" that the public entity provides. Sosa, 80 F.4th at 31 (quoting 42 U.S.C. §12101(a)(5)). As with any other claim, plaintiff bears the burden of plausibly alleging that he is a "qualified individual with a disability," Buchanan v. Maine, 469 F.3d 158, 170-71 (1st Cir. 2006), and that his exclusion by the public entity occurred "by reason of his disability," Toledo, 454 F.3d at 38; Parker, 225 F.3d at 4.

Plaintiff's allegation in this case that the SEEM defendants overreacted to D.S.'s responses to writing assignments and made false reports to police regarding D.S. are

- 8 -

undoubtedly troubling when accepted as true. Plaintiff does
not, however, sufficiently draw an inference between any such
acts and D.S.'s disability. Nothing in plaintiff's complaint
alleges, nor can this Court reasonably infer, that the SEEM
defendants would have acted any differently in the face of a
student who, like D.S., wrote about explosive chemicals and was
the subject of an outstanding search warrant but, unlike D.S.,
was not disabled. Plaintiff's ADA claim will therefore be
dismissed.

### B. MERA Claims (Counts IV and V)

Plaintiff also includes a claim under the Massachusetts
Equal Rights Act ("MERA") which provides that persons with a
handicap are entitled to receive the "full and equal benefit of
all laws and proceedings for the security of persons and
property," including the right to "make and enforce contracts,"
to convey and inherit property, to bring lawsuits and otherwise
to receive the protection of Article CXIV of the Massachusetts
Constitution.[3] M.G.L. c. 93, §§ 102(a), 103(a). Article CXIV
provides, in turn, that no person who suffers from a handicap
can, by reason of his handicap, be "excluded from the
participation in" or "denied the benefits of . . . any program
or activity within the [C]ommonwealth." Mass. Const. art. CXIV.

---

[3] The term "handicap," as used in the MERA, is "virtually identical" in
meaning to the term "disability" applied in federal law under the ADA.
Brodsky v. New. Eng. Sch. of L., 617 F. Supp. 2d 1, 4 (D. Mass. 2009).

Courts have routinely construed the term "make and enforce contracts" as placing a limitation on MERA claims. Thus, to be actionable, a MERA claim requires a contractual relationship such that the alleged discrimination either "blocks the creation of a contractual relationship" or "impairs an existing contractual relationship" between the parties. Jones v. Baystate Health, Inc., No. CV 22-10417-MGM, 2022 WL 21778544, at *7 (D. Mass. Nov. 4, 2022) (citing Morgan v. Driscoll, No. 98-cv-10766-RWZ, 2002 WL 15695, at *7 (D. Mass. Jan. 3, 2002) (explaining a MERA claim, to survive, must identify a "contractual right or opportunity which was lost or interfered with").

As defendants correctly assert, plaintiff in this case alleges no contractual relationship between D.S. and defendants. Accordingly, she fails to state a MERA claim. See Harvard L. Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll., 595 N.E.2d 316, 319 (Mass. 1992) (affirming dismissal of a MERA claim because the "complaint failed to allege that the plaintiffs had a contract" with the school at issue); Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 354 (D. Mass. 2016) (dismissing MERA claim based upon the absence of a contract); see also Morgan, 2002 WL 15695, at *7 (allowing summary judgment on a MERA claim because the plaintiff failed to produce evidence demonstrating a contractual relationship with the school).

In response, plaintiff concedes that her complaint alleges no contractual relationship but instead relies upon a single decision of the Massachusetts Superior Court which concluded that "[t]he contract provision of MERA [does not] limit the context" of the overall protection of MERA. Haskins v. President & Fellows of Harvard Coll., No. 993405, 2001 WL 1470314, at *4 (Mass. Super. Sept. 18, 2001).  Even in that case, however, the court relied on plaintiff's "contractual relationship" with the school when addressing the viability of his MERA claim. Id. Plaintiff has thus identified no decision in which a MERA claim proceeded in the absence of a contract and, consequently, her MERA claim will be dismissed.

**C. Section 1983 Claim (Count IX)**

Plaintiff next asserts a civil rights violation pursuant to 42 U.S.C. §1983, alleging that defendant's actions caused a state-created danger to D.S.  Defendants again respond that her claim is not actionable as a matter of law.

Pursuant to 42 U.S.C. §1983, state actors can be held liable under the due process clause of the Fourteenth Amendment for conduct that creates or enhances a risk of danger to a plaintiff. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201 (1989).  That includes conduct of police officers during the execution of a warrant. Brower v. County of Inyo, 489 U.S. 593, 596 (1989).  To plead a state-created danger claim, a

- 11 -

plaintiff must establish that 1) a state actor "affirmatively acted to create" some danger, 2) the danger was "specific to the plaintiff," 3) the acts caused harm to the plaintiff and, finally, 4) the state actor's conduct "shocks the conscience" of the court. Irish v. Fowler, 979 F.3d 65, 75 (1st Cir. 2020).

A state actor's conduct "shocks the conscience" if it consists either of "egregious" acts that, without "any government interest" in doing so, were

> intended to injure [the plaintiff or acts that are] deliberately indifferent [despite an] opportunity to reflect and make reasoned . . . decisions.

Rivera v. Rhode Island, 402 F.3d 27, 35-36 (1st Cir. 2005).

The bar for conscious-shocking conduct is a high one. Conduct that is merely negligent, or even willfully reckless, fails to sustain a state-created danger claim. Soto v. Flores, 103 F.3d 1056, 1063-64 (1st Cir. 1997); see Melendez-Garcia v. Sanchez, 629 F.3d 25, 37 (1st Cir. 2010) (describing conscious-shocking conduct as requiring "stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law . . . [or] bad faith" (internal quotations omitted); Rivera, 402 F.3d at 35 (recognizing that state-created tort liability or mere "inaction" is not conscious-shocking). Consequently, the state-created danger doctrine applies only in "exceptional case[s]" and "rarely succeed[s]" on the merits.

- 12 -

Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997);

Gonzalez-Fuentes v. Molina, 607 F.3d 864, 885 (1st Cir. 2010).

In this case, plaintiff's complaint alleges detailed assumptions that the SEEM defendants made with respect to D.S.'s mental illness and actions that police took but the only relevant inquiry must be as to the actions of the SEEM defendants, themselves. The only such affirmative action that plaintiff alleges is that the SEEM employees assisted police by escorting D.S. to a school conference room, where police subsequently confronted him. Based upon the totality of circumstances, the Court finds that such allegations fail to meet the extraordinarily high threshold other cases have set for conscience-shocking behavior. See, e.g., Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999) (affirming dismissal of state-created danger claim because school officials' behavior did not shock the conscience even where their affirmative reprimanding of a student exacerbated her mental health problems and ultimately led to her suicide); Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 299 (D. Mass. 2017) (dismissing state-created danger claim because school officials' behavior did not "shock the conscience" even where the officials required plaintiff to sleep in an overnight bunkhouse with known bullies who took plaintiff's cellphone, pelted him with food and sodomized him with a broom handle).

At most, the actions of the SEEM defendants can be construed as negligent with respect to D.S.'s known disabilities and negligent conduct alone cannot sustain a state created danger claim. See Soto, 103 F.3d at 1063-64; Melendez-Garcia, 629 F.3d at 37. In the absence of any such conscious-shocking conduct, plaintiff's state-created danger claim is not actionable and will therefore be dismissed.

Plaintiff's complaint (and opposition to defendant's motion to dismiss) cursorily allege that the SEEM defendants also violated the Fourth Amendment of the U.S. Constitution by "unreasonably" assisting in the seizure of D.S.'s cellphone but, in the absence of any specific allegations, that sub-claim of plaintiff's complaint will also be dismissed.

### D. Intentional Infliction Claim (Count X)

Under Massachusetts law, intentional infliction of emotion distress ("IIED") arises when a defendant 1) engages in conduct with an intent to inflict emotional harm and 2) such conduct is "extreme and outrageous". Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (Mass. 1976); Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014). Conduct is extreme and outrageous only if it is "beyond all bounds of decency" and "utterly intolerable in a civilized community." Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994) (citing Restatement (Second) of Torts §46 cmt. d).

The standard for conduct that is extreme and outrageous is a "very high" one. Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). Ordinarily, it is an issue of fact and, if "reasonable people could differ on whether the conduct is extreme and outrageous," it is left to the jury. Bassett v. Jensen, 459 F. Supp. 3d 293, 309 (D. Mass. 2020) (quoting Vittands v. Sudduth, 730 N.E.2d 325, 335 (Mass. App. Ct. 2000). When the conduct alleged cannot be deemed utterly intolerable in a civilized community, however, the Court may allow a motion to dismiss. Polay v. McMahon, 10 N.E.3d 1122, 1129 (Mass. 2014).

Plaintiff alleges that the SEEM defendants engaged in extreme and outrageous conduct by unreasonably portraying D.S. as dangerous to the police and intentionally collaborating with police to seize D.S.'s phone and completely disregard the potential risks to D.S. Even if accepted as true, such allegations cannot meet the stringent standard for extreme and outrageous conduct. See Biscan v. Town of Wilmington, 721 F. Supp. 3d 127, 142 (D. Mass. 2024), reconsideration allowed on other grounds, 771 F. Supp. 3d 26 (D. Mass. 2025) (finding that deliberate indifference toward a student's rights does not amount to extreme and outrageous conduct). On the contrary, courts have rejected IIED claims based upon a school's cooperation with police, even where the police allegedly caused the student emotional harm, see, e.g., Jones v. Maloney, 910

- 15 -

N.E.2d 412, 414 (Mass. App. Ct. 2009).  Plaintiff does not state a claim for IIED and that claim will therefore be dismissed.

### ORDER

For the foregoing reasons, the motion of defendants, the SEEM Collaborative, Jennifer Pignone, Adam McCusker, Josephine Jaynes and Pamela Mulvey, to dismiss (Docket No. 27) is **ALLOWED**.

**So ordered.**


*Nathaniel M. Gorton*
_____
Nathaniel M. Gorton
Senior United States District Judge

Dated:  August 13, 2025